Good morning, everyone, and welcome. Judge Wallace and I are very pleased to be sitting today with Judge Lasnik, who's visiting from the Western District of Washington, sitting by designation. We love sitting with him and really appreciate his help and willingness to do this. Thank you very much, Judge Friedland. And we know we have high school students here today, so welcome to all of you. We're really pleased you're here. At the end of all the arguments, we will conference about the cases and then come back out and talk to the high school students. We will not discuss the substance of any of the cases that will have been argued today, so no lawyers need to feel like they need to stay. But if anyone wants to stay, everyone is welcome for that Q&A session. OK, so with that, we have two cases that are submitted on the briefs today. Villegas v. Barr, 17-71372, that is submitted on the briefs. And Category v. Mattson Terminals, 18-72398, that case is submitted on the briefs as well. We will hear the remaining cases in the order in which they appear on the calendar. The first is Kashanian v. Barr, 17-71001. And each side will have 15 minutes. Good morning, Your Honors. Frank Sproul is appearing for the petitioner to please the court. This case involves sort of a careful parsing of statutory and regulatory language. And to start that, I think it's very important that we recognize what section of law we were proceeding under. And that was the 18-6C-4B. That is a section that simply says the alien has to prove that the marriage was terminated and it was entered in good faith. We were most assuredly not proceeding under A, which is the hardship waiver. The waiver was filed by the prior attorney administratively, so that was the only waiver the IJ was statutorily empowered to address. Obviously, if we're proceeding on the hardship waiver, it would've been all about a Western secular Iranian being sent to the theocratic nightmare of Iran. We would've argued that. We didn't. So our position is that the IJ acted in excess of her authority. When she made the finding, which is all the statute requires, is that the marriage was, in fact, in good faith. We argue the statute is silent as to any good moral character or criminal preclusion grounds. If Congress wanted to do that, they would've done it. The statute is silent. The regulations are silent. All they deal with is the adjudication of the good faith of the marriage. The word discretion, which occurs in the statute, is discretion to determine the good faith nature of the marriage.  determination of the desirability of the alien. For instance, on page 11 of my brief, I talk about the cancellation of removal statute, where it uses the word discretion in determining the hardship to citizens, parents, or children. So obviously, discretion doesn't always mean determining if this person is desirable as an alien. The other thing to look at is the general architecture of the statute. Not every alien has to do this. Only a carefully circumscribed class of aliens have to remove the conditions. And that's for people who file their marriage petition within two years of marriage. It cannot be gainsay that the purpose of the statute is not for the government to have a second look at the bona fides of marriage. In a very real sense, it doesn't even confer new status. It just continues the previous grant of residency. Once you become a permanent resident, after the conditions are lifted, your period of residency relates back to the conditional, and the person's eligible for citizenship. So it's not really a new application for relief. How do you deal with our decision in Sing? It's completely inapposite, because that was under A. That was where the person, they were not married. I mean, the marriage wasn't terminated. So they were operating under the hardship waiver, not ours. So why would there be discretion in one but not the other? Well, because I think when it's hardship, clearly, again, even to relate back to the cancellation statute, hardship connotes some discretion, right? I mean, what is hardship? Great hardship, minimal hardship. I mean, Sing simply occurred in a different section of the law. So it's not really dispositive, not even relevant in my mind. Secondly, the other case that the government and the BIA, is the Herrera case, the BIA case, that's not really relevant at all, because that only stands for the position that the alien, when he's before the judge, can submit new evidence in terms of the bona fides of the marriage, not his desirability as an alien. So it's really not relevant to our case, which is. That is the context of Herrera, but I understood the government's argument to be that the reasoning of Herrera showed that there was really a complete review, which would include discretion. But the only reason I would say no is because you have to look at not just the facts of that, but that was under the termination and the good faith marriage. And all it said was, the alien can bring in relevant evidence to the authenticity of the marriage. It had nothing to do with desirability, good moral character, and so on. So I don't think it's really a posit. So can you speak to, I know we issued an argument order to discuss whether the IJ here even had authority, because it seems that this has been transferred away from the Attorney General, and the IJs are under the Attorney General. So does the IJ even have authority at all? I certainly hope so. Right, I understand that, because if they don't, then you have no hope, right? Sure, sure. And I think, you know, I did a little mini-brief. I do think to strip appellate jurisdiction has to be done with a little greater textual authority than just the switching of the names. You know, repealed by implication. Wait, is it appellate jurisdiction, though? I think I'm asking whether the IJ had jurisdiction. Sure. But it's still considered administrative review. I mean, I would say it's, you know, the alien has administrative order, and then the immigration judge is acting as a type of appellate court. Because really, all they are doing is reviewing the decision below. So it is a type of appellate jurisdiction. And repeal by implication, I think, is always disfavored. So that would be my argument. But why is it implication? I mean, it was moved to a different agency that doesn't have IJs. Right, but you have to look at the rest of the statute that does give the IJ a review. So I mean, I don't think it's by implication. I mean, I can't say more than that, because it is really just by implication. I mean, I do think there would have to be greater textual support to say, OK, you know, you get one bite at the apple administratively, and that's it. I do think there needs to be stronger textual support. So I mean, I think it's fairly narrow. And you know, there's no prejudice to the government. I mean, what they should have done in this case is, once the immigration judge granted the case, finding the bona fides of the marriage, and then there was this crime, they should have issued a charging document and put them in proceedings. That's exactly what the statute, what they should have done. Instead, I think everybody acted ultra-virus. And I think that's it. I'll save my time if there's any question. Thank you. Thank you. Good morning. May it please the court, my name is Greg Kelch, and I represent the United States Attorney General. We disagree with Mr. Kashanian's understanding of why he is removable. So he's charged with removability under section 1227 A1D of the immigration statute. That is a provision that makes a person removable if their conditional residence has been terminated. Moving to section 1186 A, subparagraph C1 says that a person with conditional residence must file a joint petition with their US citizen spouse on the second anniversary of the granting of the conditional residence. Subparagraph C2AI says that if the non-citizen does not file this joint petition, then the conditional residence is terminated. In that case, the only relief that a person like Mr. Kashanian would have would be to seek a waiver of the joint petitioning requirements under subparagraph C4. That is the hardship waiver. And I think this court has resolved the issue in Singh v. Holder and other cases that that is ultimately discretionary. It's a two-step process. First, we look at, does he meet one of the eligibility conditions for a hardship waiver? And here, that would be a bona fide marriage. And then at step two, there is a second-order discretionary determination, where we balance one's positive equities and one's negative equities. Now, Mr. Sproul's made reference to subparagraph B. That is a different scenario. That is termination by the secretary, and it says here, before the second anniversary of the aliens obtaining conditional permanent residence. So that is a situation where you have a US citizen and a non-citizen. And they are a married couple. And the DHS is terminating the conditional residence, saying that it is a sham marriage. It makes sense that when the non-citizen comes to removal court, DHS should have the burden of proof to prove that this is a sham marriage. After all, you have a United States citizen and their spouse saying otherwise, that they're in a committed, loving relationship. That's not what's happened here. Ms. Hall will not file a joint petition with Mr. Kashanian, because she believes that he was using her just to get a green card. So now we proceed to subparagraph C. And that is the problem that he has, that he cannot file the joint petition. That, and that alone, makes him removable. So he's saying here today that he's not under subparagraph C-4. So I'm not quite sure where our argument should go. The court, I know, has issued questions about C-4. I'm happy to discuss those. And our office is thinking about that. So does your office have a position about whether the IJ had jurisdiction at all? So, I mean, we do. And I want to be careful now. Obviously, the BIA has not spoken to this yet. But our thinking is that those 2011 amendments from Congress, Congress didn't intend to change the way that these hardship waivers are reviewed. So that 2011 amendments, if we look at the face of the public law and its legislative history, the purpose of that was to provide some relief for our military service members who are serving abroad and the unique challenges that they would face with the two-year joint petitioning and interviewing requirements. So the language that concerns us here is under, of the 2011 amendments, subparagraph A, subparagraph B, that is titled conforming amendments. This is a function that used to be handled by the former INS. Now it's been transferred over to DHS. So Congress just said, in general terms, go to the statute. And everywhere it says Secretary of Homeland Security, or says Attorney General, change that to Secretary of Homeland Security. And I'll point out, it did a lot of good. The statute reads much better now. It now makes it clear. You file your joint petition with DHS. DHS is going to conduct the interview. DHS will make the termination decision. It only becomes awkward when we get to C4, where it says, DHS may grant the hardship waiver. But I think that if we read this language in context, the 2011 amendments, there's nothing in here that says, that indicates that Congress ever intended to change the way it's reviewed. And so I think when you, the, I agree that it doesn't seem like Congress meant to do this, but I wonder if they did it by mistake. Because once it's in DHS, can it go over to the other agency for the review? We would say that it should, yes. And if you look at, as we argued in our brief, two provisions, we direct the court's attention to subparagraph C3D. We recognize that refers to a joint petition that's being filed, and DHS says that the information in that joint petition is not truthful. And it says there shall be review before the immigration judge. It makes sense that also there would be review of whether the non-citizen has to file that joint petition in the first place. Also, if you look at 1229A, section 1229A of Title VIII, Congress set forth an explanation for how removal proceedings work. Generally, when someone shows up in immigration court, they can file applications for relief. They have a statutory right to present evidence. It's the immigration judge who will decide the removability based upon the evidence. So again, that also supports the reasoning that immigration judges still retain the same powers that they had before. And then one final point that I'll make. Do you think this is an issue we need to address? Absolutely not. Because if I'm wrong, and immigration judges are not supposed to be reviewing these hardship waivers, then the only thing that's happened here is that Mr. Kashanian got some extra judicial review that he was never supposed to have in the first instance. And I would think the court would be much better served to allow that issue to develop before the agency rather than to try to resolve that on its own. So if there are no further questions, I will simply conclude by saying, again, his status was terminated because he did not and cannot file a joint petition. And so therefore, because that issue really is not in dispute, the court should deny the petition for review. Thank you. Thank you. Very briefly. My esteemed colleague's last remark that they couldn't file the joint petition. That's why we have the waivers. I mean, that's really not in dispute. I mean, in terms of, back to the threshold jurisdictional question, I mean, I think it would really raise some due process questions in the fact that, you know, the agency denies something, but then you're put in proceedings. You have no choice in the matter. And then the IJ, you have to file something else. I mean, that's very rare in our immigration jurisprudence, where you don't get a review before the IJ. I mean, it seems that if Congress was gonna do that, that would have to be more explicit because that would be rather anomalous. I was denied, you know, the service, let's say they made a ridiculous finding, you know, and you can't bring it up before the IJ. You're hamstrung, you have to do something else. If Congress wanted to do that, I mean, I think they would need something a little more explicit than just the changing of the name. And finally, I don't think the government properly addressed our argument that, you know, the statute is clear, that it's silent as to good moral character or desirability. There has to be a reason. If you look at their regulations, it's silent as to good moral character or desirability. There's only two things that have to be found under this section, that the marriage was terminated, and that there is a finding of the authenticity of the marriage, at which point, again, no great new relief is granted. The person just continues as a resident, now a permanent resident. So I think, again, the immigration judge was correct to grant the waiver and confer permanent residency. Many months later, the government made a motion to reopen, and she should have denied that, and, you know, given the government leave to file criminal charges if they wanted to. This was acting in excess of her statutory and regulatory authority, and I'd submit the matter. Thank you both sides for the arguments. The case is submitted.
judges: Wallace, Friedland, Lasnik